Bresett v. Claremont                    CV-01-343-M    08/28/02

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Norman Bresett,
      Plaintiff

      v.                                  Civil No. 01-343-M
                                          Opinion No. 2002 DNH 159
City of Claremont,
      Defendant


**O R D E R**


In February of 1999, the City of Claremont published a
newspaper advertisement informing the public that it was
accepting employment applications for positions as a skilled
laborer and truck driver.  The advertisement provided that
qualified applicants should hold a current commercial driver's
licence and have experience operating heavy equipment.
Plaintiff, Norman Bresett, has both and, within a week of the
publication of the advertisement, submitted a completed job
application.  At the time, he was 61 years old.


Bresett was never given an interview and eventually learned
that the City had made offers to several other applicants, each
of whom was substantially younger than he and, according to

Bresett, less qualified than he. When Bresett inquired of City officials as to why he was never even given an interview, he says he received inconsistent and often factually inaccurate explanations. Suspecting that he had been the victim of unlawful discrimination, Bresett filed a two count complaint against the City, alleging that it discriminated against him on the basis of his age, in violation of the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. § 623, et seq., and New Hampshire's Law Against discrimination, N.H. Rev. Stat. Ann. ch. ("RSA") 354-A. The City denies any wrongdoing and moves for summary judgment. Bresett objects.

## Standard of Review

When ruling on a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this context, "a fact is

2

'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Intern'l Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Center, 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

Nevertheless, if the non-moving party's "evidence is merely colorable, or is not significantly probative," no genuine dispute as to a material fact has been proved, and "summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted). As the Court of Appeals for the First Circuit has observed, "the evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial. Conclusory allegations, improbable inferences, and unsupported speculation will not suffice." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997) (citations and internal quotation marks omitted). See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the

3

non-moving party, there is no 'genuine issue for trial.'")
(citation omitted).

## Discussion

I.    The ADEA.

The ADEA makes it unlawful for any employer to "fail or
refuse to hire . . . any individual . . . because of such
individual's age."  29 U.S.C. § 623(a)(1).  In cases such as
this, where there is little or no overt evidence of age
discrimination, courts typically employ the burden-shifting
framework articulated by the Supreme Court in McDonnell Douglas
Corp. v. Green, 411 U.S. 792 (1973).  The Court of Appeals for
the First Circuit has summarized the McDonnell Douglas burden-
shifting paradigm as follows:

> Under this formulation, a plaintiff opens with a
> prima facie showing of certain standardized
> elements suggestive of possible discrimination.
>
> * * *
>
> Establishment of the prescribed prima facie case
> creates a presumption that the employer engaged in
> impermissible age discrimination.  However, to
> rebut this presumption, the employer need only
> "articulate a legitimate nondiscriminatory reason
> for the employee's termination."  The employer's
> obligation is simply one of production.  "The

4

burden of persuasion remains [the employee's] at
all times."

LeBlanc v. Great American Ins. Co., 6 F.3d 836, 842 (1st Cir.
1993) (citations omitted).


Assuming the employee has established a prima facie case
suggestive of age discrimination, and provided the employer then
responds with a legitimate, nondiscriminatory reason for the
adverse employment action, the burden of persuasion reverts to
the plaintiff.

> [Once] the defendant has succeeded in carrying its
> burden of production, the McDonnell Douglas
> framework -- with its presumptions and burdens --
> is no longer relevant.  To resurrect it later,
> after the trier of fact has determined that what
> was "produced" to meet the burden of production is
> not credible, flies in the face of our holding in
> Burdine that to rebut the presumption "the
> defendant need not persuade the court that it was
> actually motivated by the proffered reasons."  450
> U.S. at 254.  The presumption, having fulfilled
> its role of forcing the defendant to come forward
> with some response, simply drops out of the
> picture.

St. Mary's Honor Center v. Hicks, 509 U.S. 502, 510-11 (1993).
So, to survive summary judgment, the plaintiff must then produce
sufficient evidence to warrant the factual conclusion that the

reason articulated by the employer for the adverse employment action was a mere pretext for unlawful age discrimination. LeBlanc, 6 F.3d at 842. And, in this circuit, the employee must produce "not only minimally sufficient evidence of pretext, but evidence that overall reasonably supports a finding of discriminatory animus." Id. at 843 (citation and internal quotations omitted). The plaintiff "may not simply refute or question the employer's reasons. To defeat summary judgment at this stage, a plaintiff must produce evidence that the real reason for the employer's actions was discrimination." Gadson v. Concord Hospital, 966 F.2d 32, 34 (1st Cir. 1992). In appropriate circumstances, however, "[w]hen the prima facie case is very strong and disbelief of the proffered reason provides cause to believe that the employer was motivated by a discriminatory purpose, proof of pretext [alone] 'may' be sufficient." Lattimore v. Polaroid Corp., 99 F.3d 456, 465 (1st Cir. 1996) (citing St. Mary's Honor Center, 509 U.S. at 511) (emphasis supplied). See generally Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000).

II.  Plaintiff's Evidence.

The City concedes that Bresett has established a prima facie case of discrimination under the ADEA.  See Defendant's memorandum (document no. 15) at 14.  Consequently, the burden shifts to the City to articulate a legitimate, non-discriminatory basis for its decision not to interview (or hire) Bresett.  On that point, the City says its decision-makers (City Manager, Robert Porter, and Director of the City's Department of Public Works, Peter Goewey) "formed a negative opinion of [Bresett], entirely unrelated to his age."  Defendant's memorandum at 15.  Specifically, the City says: (1) prior to receiving Bresett's job application, both Porter and Goewey knew of him from the community and neither had a favorable opinion of him or his work ethic; (2) Porter had heard that Bresett had been discharged by a previous employer for having stolen company property; (3) Porter also believed Bresett was a smoker and, therefore, physically unfit and felt that unfit people "tended to dislike the physical demands of the skilled laborer position and, as a result, developed poor attitudes toward their jobs" (improving morale in the City's employees was, according to the City, a priority); (4) several years ago, Goewey had seen Bresett on a number of

occasions visiting a friend at the friend's place of employment, often speaking negatively about his then-current employer and occasionally drinking alcoholic beverages on the premises; (5) Bresett was not "aggressive" about obtaining employment with the City, while other applicants repeatedly and consistently expressed an interest in working for the City; and (6) only a few months before deciding not to interview Bresett, Porter and Goewey hired a 61 year-old applicant to work as a water treatment plant operator, thus demonstrating that they bore no animus against older workers.

Bresett labels each of the City's proffered explanations an after-the-fact rationalization, designed to conceal Porter's and Goewey's true discriminatory animus. Although Bresett endeavors to undermine each of the City's stated reasons for not hiring him, he is unable to point to any evidence suggesting that Porter or Goewey did not truly believe the explanations they offered or, perhaps more importantly, that they were actually motivated by an unlawful age bias in deciding not to extend Bresett a job offer.

For example, Bresett admits that he was fired by a prior employer for "alleged theft," but points out that the employer subsequently rehired him and, upon Bresett's departure, provided him with a positive recommendation. Consequently, he suggests that the City should not have drawn any adverse inferences from those events.

With regard to his health and fitness, Bresett admits that he is a smoker (and does not deny that he is overweight), but says that the City could have (and should have) implemented a no-smoking policy if it were truly concerned that its employees be physically fit. Bresett also points out that the City hired George Miller, who is a smoker. From that, he says, "[a] jury could conclude that either Mr. Goewey and[/or] Mr. Porter knew Mr. Miller smoked and offered him a job anyway or did not ask, either of which demonstrates that Mr. Bresett's smoking was not a real reason for rejecting his application." Plaintiff's objection at 12. Finally, as to Goewey's claim that he observed Bresett complaining about a former employer and drinking beer at one of his friend's place of employment, Bresett points out that

9

those events happened nearly 20 years ago and suggests that they are an unreasonable basis upon which to make a hiring decision.

Bresett also claims that some of the applicants interviewed and/or actually extended job offers had less experience than he. So, for example, he says:

> [O]ther applicants to whom the City extended offers had no qualifications whatsoever for the position or were considerably less qualified than Mr. Bresett. For instance, Mr. Benware, age 41, did not have a [commercial driver's license] and left the "Skills, Qualifications, and Experience" section completely blank. Mr. Leavitt, age 37, did not have a [commercial driver's license], and his resume did not reflect that he had any experience with heavy equipment operation. Mr. Miller, age 35, Mr. DeCoteau, age 37, and Mr. Zullo, age 45, had [commercial driver's licenses] and indicated some experience with heavy equipment operation, but not as much as Mr. Bresett listed. Nevertheless, they were given interviews and job offers and were significantly younger than Mr. Bresett.

Plaintiff's objection (document no. 17) at 11 (emphasis in original).

In response, the City offers legitimate reasons for having interviewed and/or extended offers of employment to each of those applicants. They include Porter's and/or Goewey's personal

10

knowledge of the applicant, superior applicable job experience or skills, stable and long-lasting employment history, and superior references from prior employers. See generally Defendant's memorandum at 8-10. For example, the City says that Daniel Benware was interviewed and eventually hired as a skilled laborer at least in part because his application revealed a stable employment history - he worked for the same employer since graduating from high school. Additionally, Goewey went to school with him, knew his family members, and believed they all possessed a strong work ethic. Goewey also knew that Benware was active in the community (coaching youth sports) and, for that reason, says he viewed Benware as a potentially valuable employee. Accordingly, Benware was given an interview, at which he impressed both Porter and Goewey with his confidence and willingness to perform any duties listed in the job description for skilled laborer. While Bresett argues that those are unreasonable factors upon which to base a hiring decision, he has not pointed to any evidence that would suggest that Porter or Goewey did not rely on those factors when making their decision.

11

III. Plaintiff's Legal Argument.

The crux of plaintiff's argument against summary judgment is that he has presented "compelling substantive evidence demonstrating that the City's articulated reasons [for not hiring him] were simply a pretext for discrimination." Plaintiff's objection at 1. Additionally, he claims that he has presented sufficient evidence to cast reasonable doubt on the City's proffered justifications for its actions and asserts that a "jury may reject the legitimate business justification defense simply because it finds that the defendant lacks credibility." Id.

As to plaintiff's first point - that he has presented "compelling substantive evidence" showing that the City's stated reasons for its actions are simply a pretext for age-based discrimination - the court disagrees. While plaintiff might legitimately question the fairness or reasonableness of the City's stated reasons for its conduct, he has not produced evidence from which a reasonable trier of fact might properly conclude that Porter or Goewey did not truly act for the reasons they have offered. And, more to the point, nothing Bresett

12

offers even suggests that Porter or Goewey was motivated by an unlawful age bias.

For example, while it might not be viewed as "fair" that Goewey formed a negative opinion of Bresett nearly twenty years ago when he overheard Bresett complaining about his employer and observed him drinking beer while at a friend's place of employment, neither the ADEA nor New Hampshire's Law Against Discrimination prohibits employers from making hiring decisions based upon such views. The same is obviously true with regard to Goewey's favorable opinion of Benware, based upon having attended school with him, knowing his family members are hard-working, and familiarity with his volunteer work in the community. Merely questioning an employer's reasons for its hiring decisions, or suggesting that assessing more reliable factors would have produced a different result, is simply insufficient to demonstrate a pretext for discrimination. As the Court of Appeals for the Seventh Circuit has explained:

> It is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible. Mister v. Illinois Cent. Gulf R.R. Co., 832 F.2d 1427, 1435 (7th Cir. 1987) ("The employer need not have 'good' reasons, and a mistaken business decision

13

is not on that account a 'pretext.'"). He must show that the explanation given is "a phony reason." If the plaintiff shows that the reason given is <u>not</u> <u>true</u>, then he has shown pretext. Having done so, the trier of fact is allowed to infer that the falsehood was meant to conceal illegal job discrimination.

<u>Pignato v. American Trans. Air, Inc.</u>, 14 F.3d 342, 349 (7th Cir. 1994) (emphasis in original). <u>See also</u> <u>Vega v. Kodak Caribbean, Ltd.</u>, 3 F.3d 476, 479 (1st Cir. 1993) ("To prevail at this third stage [of the <u>McDonnell Douglas</u> framework], the plaintiff must ordinarily do more than impugn the legitimacy of the employer's asserted justification."). Here, notwithstanding his assertions to the contrary, Bresett has pointed to no evidence that is, either directly or implicitly, supportive of his claim that the City's stated explanations for its decision not to interview him are either untrue or a pretext for <u>unlawful age-based discrimination</u>.

Bresett's second argument - that a trier of fact might still reasonably infer unlawful discrimination in this case - is based largely upon the Supreme Court's recent opinion in <u>Reeves</u>, <u>supra</u>. There, the Court made clear that "it is <u>permissible</u> for the trier of fact to infer the ultimate fact of discrimination from the

14

falsity of the employer's explanation [for the adverse employment action]." 530 U.S. at 147 (emphasis in original). The Court went on to observe that:

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the <u>falsity of the explanation</u> that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt."

<u>Id.</u> (citations omitted) (emphasis supplied). The Court did, however, offer the following cautionary statement:

> This is not to say that such a showing by the plaintiff will <u>always</u> be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

* * *

15

> Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

Id. at 148-49 (emphasis in original).

Ultimately, the Court concluded that because the plaintiff in that case had established a prima facie case of discrimination, and made a "substantial showing" that the employer's proffered justification for the adverse employment action was false, and provided additional evidence of intentional age-based discrimination, the court of appeals erred in overturning a jury's verdict in favor of the plaintiff. Id. at 153-54.

This case is, however, plainly distinguishable. Critically, Bresett has failed to point to sufficient evidence to warrant the conclusion that the City's proffered justifications for its actions are false. For example, with regard to his smoking, Bresett suggests that it was not a real factor in the City's

16

decision not to interview him. If an employee's smoking habits were of true concern to the City, says Bresett, it could have implemented a no-smoking policy. It did not - a fact he says demonstrates that applicants' smoking habits did not actually color the City's perception of them. In further support of his point, Bresett points out that the City hired George Miller, who is a smoker. From that, he says a jury might reasonably infer that Goewey and/or Porter lied when they said Bresett's smoking was a factor that weighed against him.

Bresett is, however, incorrect. He has pointed to no evidence from which a jury might reasonably draw such an inference, particularly in light of the uncontroverted testimony of Porter and Goewey, both of whom denied knowing that Miller was a smoker when he was offered a position with the City. Any conclusion that the City's stated concern about Bresett's smoking and physical condition was false would be speculative.

While the City's justifications for not interviewing (or hiring) Bresett might be seen by some as unfair or unreasonable or, as Bresett suggests, "lacking in reliability," plaintiff's

17

objection at 14, the record presented simply would not support the conclusion that they are false. See, e.g., Williams v. Raytheon Co., 220 F.3d 16, 19 (1st Cir. 2000) ("Williams' case is a far cry from Reeves'. Williams made no showing, much less a substantial showing, that the insubordination justification [offered by his employer] was false."). In other words, nothing in the record suggests that Porter and/or Goewey acted for reasons other than those offered. More importantly, there is no evidence from which a trier of fact might reasonably infer that their true motivation was an age-based discriminatory animus. Employers are permitted to base their hiring decisions on any number of factors and, unless they rely upon one or more of the very few factors that are specifically proscribed by law (e.g., age, gender, race), employers need not have a solid evidentiary basis for their hiring decisions, nor need those decisions be reasonable, wise, rational, intelligent, or fair.

Absent sufficient evidence to warrant a reasonable conclusion that the justifications proffered by the City are false (or, of course, direct evidence supportive of his claim that the City was motivated by an age-based animus), Bresett

18

cannot sustain his "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against" him, Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981), and, therefore, his complaint cannot survive the City's motion for summary judgment.

## Conclusion

In order to survive summary judgment in the wake of the City's proffer of lawful justifications for its decision not to interview (or hire) him, Bresett must point to sufficient evidence to warrant a fact-finder's conclusion that his age "actually played a role in the [City's] decisionmaking process and had a determinative influence on the outcome." Reeves, 530 U.S. at 141 (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)). He may carry that burden in either of two ways. First, he may point to direct evidence that is sufficient to "permit a reasonable juror to find that [he] sustained his ultimate burden of proving [the City] intentionally discriminated against him on account of his [age]." Williams, 220 F.3d at 19. Or, in the absence of direct evidence of discrimination, he may attempt to produce sufficient evidence to warrant the conclusion

19

that the City's proffered explanations for its decision are false. In appropriate circumstances, such a showing may be sufficient to stave off summary judgment. Reeves, 530 U.S. at 148 ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").

This, however, is not such a case. First, Bresett has no evidence that suggests, either directly or by implication, that an age-based discriminatory animus motivated the City's decision not to hire him. He has also failed to point to sufficient evidence to warrant the conclusion that the City's stated, and otherwise legally unobjectionable, reasons for its decision are false. Absent such evidence, there is simply nothing from which a properly instructed jury might reasonably conclude that, with regard to his ADEA claim, Bresett has sustained his ultimate burden of proof: to point to sufficient facts to warrant the reasonable conclusion that the City intentionally discriminated against him because of his age. As to Bresett's ADEA claim, therefore, defendant is entitled to judgment as a matter of law.

20

Finally, because Bresett bears the same burden of proof with regard to his claim under New Hampshire's Law Against Discrimination, see Scarborough v. Arnold, 117 N.H. 803 (1977); N.H. Dept. of Corrections v. Butland, __ N.H. __, 797 A.2d 860 (2002), defendant is entitled to judgment as a matter of law as to that claim as well.

Accordingly, defendant's motion for summary judgment (document no. 14) is granted.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

August 28, 2002

cc:  Eleanor H. MacLellan, Esq.
     William R. Bagley, Jr., Esq.

21